# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **JAMES MADISON PROJECT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.: 08-0708 (JR)** |
| | ) | |
| **CENTRAL INTELLIGENCE AGENCY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## DEFENDANT'S MOTION TO DISMISS OR ALTERNATIVELY MOTION FOR SUMMARY JUDGMENT

Defendant, the Central Intelligence Agency ("CIA"), through its undersigned attorneys, hereby respectfully moves the Court, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), to dismiss the complaint herein on the basis that the Court lacks jurisdiction and Plaintiff has failed to state a claim on which relief can be granted. Alternatively, Defendant moves, pursuant to Fed. R. Civ. P. 56, for summary judgment on the grounds that no genuine issue of material fact exists and that therefore, Defendant CIA is entitled to judgment as a matter of law. In support of this motion, the Court is respectfully referred to the accompanying Memorandum of Points and Authorities in Support, Statement of Material Facts To Which There Is No Genuine Issue, and Declaration of Delores M. Nelson attached hereto. A proposed Order is attached.

Respectfully submitted,

/s/
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

_/s/_____

JUDITH A. KIDWELL
Assistant United States Attorney
555 Fourth Street, N.W.- Civil Division
Room E4905
Washington, D.C. 20530
(202) 514-7250

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **JAMES MADISON PROJECT,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )    **Civil Action No.: 08-0708 (JR)** |
| | ) |
| **CENTRAL INTELLIGENCE AGENCY,** | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

**STATEMENT OF MATERIAL FACTS AS TO**
**WHICH THERE IS NO GENUINE ISSUE**

Pursuant to LCvR 7(h), Defendant, Central Intelligence Agency ("CIA"), hereby submits the following statement, which is supported by the Declaration of Delores M. Nelson, Chief of the Public Information Programs Division, Information Review and Release Group, Information Management Services, Office of the Chief Information Officer ("Nelson Decl.").

1. By letter dated October 18, 2007, Plaintiff submitted a FOIA request to the CIA for the following records:

> copies of all internal Central Intelligence Agency ("CIA"),
> documents pertaining to discussions concerning the decision
> to initiate an internal review of the operations of the CIA's Inspector General
> ("IG"), John Helgerson, and of the IG's Office as a whole.

Nelson Decl. ¶ 15, Exhibit A.

2. By letter dated November 5, 2007, the CIA acknowledged Plaintiff's request and assigned it reference number F-2008-00103. Nelson Decl. ¶ 16, Exhibit B. Additionally, the CIA granted Plaintiff's request for a fee waiver, but denied Plaintiff's request for expedited processing. *Id*.

3.  By letter dated March 3, 2008, the CIA informed Plaintiff's counsel that Plaintiff's request was still being processed, and that the CIA was unable to give Plaintiff a definite date for completion as had been discussed with Plaintiff's counsel by telephone on February 21, 2008. Nelson Decl. ¶ 17, Exhibit C.

4.  On April 21, 2008, Plaintiff filed the complaint herein.  *See* Docket No. 1.

5.  In early July 2008, in accordance with its procedures, the CIA concluded its processing of Plaintiff's request.  Nelson Decl. ¶ 19.  The CIA conducted diligent searches of relevant systems of records that were reasonably calculated to discover any records concerning the decision to initiate an internal review of the operations of the CIA's Inspector General.  *Id*.

6.  The CIA's search for records responsive to Plaintiff's request included the Director of Central Intelligence Agency ("DCIA") area, which includes the records systems of the DCIA Action Center, the independent offices of the Office of Inspector General ("OIG"), the Office of General Counsel, and the Office of Public Affairs.  Nelson Decl. ¶ 19.  These CIA components used a variety of search terms reasonably calculated to locate information responsive to Plaintiff's FOIA request, including the following terms:  "internal review of operations," "CIA's Inspector General," "John L. Helgerson," "OIG," "Office of Inspector General," "OIG internal review," and "Deitz review."  *Id*.

7.  The CIA's reasonable and diligent searches failed to locate any records concerning the decision to initiate an internal review of the operations of the CIA's Inspector General and thus, failed to locate any records responsive to Plaintiff's FOIA request.  Nelson Decl. ¶ 19.

8.  By letter dated July 11, 2008, the CIA informed Plaintiff's counsel that the CIA was unable to locate any records responsive to Plaintiff's FOIA request.  Nelson Decl. ¶ 19, Exhibit D.

Respectfully submitted,

/s/

JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/

RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

/s/

JUDITH A. KIDWELL
Assistant United States Attorney
555 Fourth Street, N.W.- Civil Division
Room E4905
Washington, D.C. 20530
(202) 514-7250

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JAMES MADISON PROJECT,**      ) | |
|        ) | |
|      **Plaintiff,**   ) | |
|        ) | |
|     **v.**       ) | **Civil Action No.: 08-0708 (JR)** |
|        ) | |
| **CENTRAL INTELLIGENCE AGENCY,**  ) | |
|        ) | |
|     **Defendant.**   ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**
**OR ALTERNATIVELY, MOTION FOR SUMMARY JUDGMENT**

Defendant, Central Intelligence Agency ("CIA"), through undersigned counsel, respectfully submits this memorandum of points and authorities in support of its motion to dismiss or alternatively, motion for summary judgment.

**I.  INTRODUCTION**

Plaintiff brought this action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, challenging Defendant's failure to timely process and respond to its FOIA request for "copies of all internal CIA documents pertaining to the discussions concerning the decision to initiate an internal review of the operations of Mr. Helgerson, and of the OIG as a whole." Complaint ("Compl.") ¶¶ 15-19.  The declaration of Delores M. Nelson demonstrates that the CIA conducted a diligent search of its records systems reasonably calculated to discover records responsive to Plaintiff's FOIA request.  However, the CIA found no records responsive to Plaintiff's request.

## II. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff filed this action on April 21, 2008, seeking access to records pertaining to discussions concerning the decision to initiate an internal review of the operations of the CIA's Inspector General ("IG"), John Helgerson, and of the IG's Office as a whole. Compl. ¶¶ 15-19. By letter dated October 18, 2007, Plaintiff had submitted a FOIA request to the CIA for copies of all internal CIA documents pertaining to discussions about this decision. Nelson Decl. ¶ 15, Exhibit A.

By letter dated November 5, 2007, the CIA acknowledged Plaintiff's request and assigned it reference number F-2008-00103. Nelson Decl. ¶ 16, Exhibit B. Additionally, the CIA granted Plaintiff's request for a fee waiver, but denied Plaintiff's request for expedited processing. *Id*. By letter dated March 3, 2008, the CIA informed Plaintiff's counsel that Plaintiff's request was still being processed, but that the CIA was unable to give Plaintiff a definite date for completion as had been discussed with Plaintiff's counsel by telephone on February 21, 2008. Nelson Decl. ¶ 17, Exhibit C.

In response to Plaintiff's FOIA request, the CIA conducted diligent searches of relevant systems of records that were reasonably calculated to discover any records concerning the decision to initiate an internal review of the operations of the CIA's Inspector General. Nelson Decl. ¶ 19. The CIA's search for records responsive to Plaintiff's request included a number of records systems and the use of a variety of search terms reasonably calculated to locate information responsive to Plaintiff's FOIA request. *Id*.

In early July 2008, in accordance with its procedures, the CIA concluded its processing of Plaintiff's request. Nelson Decl. ¶ 19. The CIA's searches failed to locate any records

2

responsive to Plaintiff's FOIA request.  Nelson Decl. ¶ 19.  By letter dated July 11, 2008, the

CIA informed Plaintiff's counsel that the CIA had been unable to locate any records responsive

to Plaintiff's FOIA request.  Nelson Decl. ¶ 19, Exhibit D.

### III.  LEGAL STANDARDS OF REVIEW

#### A.  Motion to Dismiss Under Rule 12(b)(1)

A motion under 12(b)(1) "presents a threshold challenge to the court's jurisdiction."

*Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).  "In reviewing a motion to dismiss for

lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the court must accept the

complaint's well-pled factual allegations as true and draw all reasonable inferences in the

plaintiff's favor."  *Thompson v. Capitol Police Bd.*, 120 F. Supp. 2d 78, 81 (D.D.C. 2000)

(citations omitted).  "The court is not required, however, to accept inferences unsupported by the

facts alleged or legal conclusions that are cast as factual allegations."  *Rann v. Chao, Dep't. of

Labor*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001) (citations omitted), *affirmed*, 346 F.3d 192 (D.C.

Cir. 2003), *cert. denied*, 543 U.S. 809 (2004).  In addition, "[o]n a motion to dismiss pursuant to

Rule 12(b)(1), the plaintiff bears the burden of persuasion to establish subject-matter jurisdiction

by a preponderance of the evidence."  *Thompson*, 120 F. Supp. 2d at 81.

A court may resolve a motion to dismiss for lack of subject matter jurisdiction under Fed.

R. Civ. P. 12(b)(1) in two ways.  First, the court may determine the motion based solely on the

complaint.  *Herbert v. National Academy of Science*, 974 F.2d 192, 197 (D.C. Cir. 1992).

Alternatively, to determine the existence of jurisdiction, a court may look beyond the allegations

of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the

conflicting evidence.  *Id.*

### B.    Motion to Dismiss Under Rule 12(b)(6)

On a motion to dismiss for failure to state a claim upon which relief can be granted

pursuant to Fed. R. Civ. P. 12(b)(6), the Court will dismiss a claim if a plaintiff's complaint fails

to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp.*

*v. Twombly*,  — U.S. —, 127 S.Ct. 1955, 1974 (2007) (clarifying the  standard from *Conley v.*

*Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Aktieselskabet v. Fame Jeans, Inc.*,--F.3d--, 2008

WL 1932768 (D.C. Cir. Apr. 29, 2008); *In re Sealed Case*, 494 F.3d 139, 145 (D.C. Cir. 2007)

(citing *Twombly*).  Hence, the focus is on the language in the complaint, and whether that

language sets forth sufficient factual allegations to support a plaintiff's claims for relief.

The Court must construe the factual allegations in the complaint in light most favorable

to Plaintiff and must grant Plaintiff the benefit of all inferences that can be derived from the facts

as they are alleged in the complaint.  *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004)

(citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).  However, the

Court need not accept any inferences or conclusory allegations that are unsupported by the facts

pleaded in the complaint.  *Kowal*, 16 F.3d at 1276.  Moreover, the Court need not "accept legal

conclusions cast in the form of factual allegations." *Id*.

### C.    Motion for Summary Judgment Under Rule 56

Summary judgment is appropriate when "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.  56(c).  A "genuine

issue" is one whose resolution could establish an element of a claim or defense and, therefore,

affect the outcome of the action.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   To

determine which facts are material, the Court must look to the substantive law on which each

claim rests. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). In determining whether

there exists a genuine issue of material fact sufficient to preclude summary judgment, the Court

must regard the non-movant's statements as true and accept all evidence and make all inferences

in the non-movant's favor. *Id.*, at 255. A non-moving party, however, must establish more than

the "mere existence of a scintilla of evidence" in support of his position. *Id*. at 252. By pointing

to the absence of evidence proffered by the non-moving party, a moving party may succeed on

summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. at 322. "If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted." *Anderson v.

Liberty Lobby, Inc*., at 249-250. The non-movant cannot manufacture genuine issues of material

fact with "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Radio

Corp*., 475 U.S. 574, 586 (1986).

D.    **Summary Judgment In FOIA Cases**

For purposes of summary judgment, an agency's decision to withhold information from a

FOIA requester is subject to *de novo* review by the Courts. *Hayden v. National Security Agency

Cent. Sec. Serv*., 608 F.2d 1381, 1384 (D.C. Cir. 1979), *cert. denied*, 446 U.S. 937 (1980). In a

FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts

are in dispute and that each document that falls within the class requested either has been

produced, is unidentifiable, or is exempt from disclosure. *Students Against Genocide v. Dept. of

State*, 257 F.3d 828, 833 (D.C. Cir. 2001); *Weisberg v. U.S. Dept. of Justice*, 627 F.2d 365, 368

(D.C. Cir. 1980).

Summary judgment may be granted to an agency in a FOIA case solely on the basis of

agency affidavits or declarations if the "affidavits [or declarations] are 'relatively detailed, non-conclusory, and not impugned by evidence . . . of bad faith on the part of the agency.'" *McGhee v. Central Intelligence Agency*, 697 F.2d 1095, 1102 (D.C. Cir. 1983).   *See also Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *Hayden v. National Security Agency Cent. Sec. Serv.*, 608 F.2d at 1387.

## ARGUMENT

### IV.  THE CIA CONDUCTED REASONABLE AND DILIGENT SEARCHES

#### A.  Legal Standard

In responding to a FOIA request, an agency is under a duty to conduct a reasonable search for responsive records.  *Oglesby v. U.S. Dept. of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *Weisberg v. U.S. Dept. of Justice*, 705 F.2d 1344, 1352 (D.C. Cir. 1983).  This "reasonableness" standard focuses on the method of the search, not its results, so that a search is not unreasonable simply because it fails to produce relevant material.  *Id.* at 777 n.4.  An agency is not required to search every record system, but need only search those systems in which it believes responsive records are likely to be located.  *Oglesby*, 920 F.2d at 68.  Simply stated, the adequacy of  the search is "dependent upon the circumstances of the case." *Truitt v. Dept. of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).

The search standards under FOIA do not place upon the agency a requirement that it prove that all responsive documents have been located.  *Nation Magazine v. U.S. Customs Serv.,* 71 F.3d 885, 892 n.7 (D.C. Cir. 1995).  It has been held that " 'the search need only be reasonable; it does not have to be exhaustive.' " *Miller v. Dept. of State*, 779 F.2d 1378, 1383 (8th Cir. 1985) (citing *National Cable Television Association v. FCC*, 479 F.2d 183, 186 (D.C.

Cir. 1973).  Even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent.  *Nation Magazine*, 71 F.3d at 892 n.7.

The burden rests with the agency to establish that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Oglesby*, 920 F.2d at 68; *see SafeCard Servs. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991).  "An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, non-conclusory and submitted in good faith.*"  Miller,* 779 F.2d at 1383.  Though the "affidavits submitted by an agency are 'accorded a presumption of good faith,'" *Carney v. Dept. of Justice*, 19 F.3d 807, 812 (2d Cir. 1994), *cert. denied*, 513 U.S. 823 (1994) *(quoting SafeCard Servs.*, 926 F.2d at 1200), the burden rests with the agency to demonstrate the adequacy of its search.  Once the agency has met this burden through a showing of convincing evidence, the burden shifts to the requester to rebut the evidence by a showing of bad faith on the part of the agency.  *Miller,* 779 F.2d at 1383.  A requester may not rebut agency affidavits with purely speculative allegations.  *See Carney*, 19 F.3d at 813; *SafeCard,* 926 F.2d at 1200.  The fundamental question is not "whether there might exist any other documents responsive to the request, but rather whether the search for those documents was adequate."  *Steinberg v. Dept. of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (*quoting Weisberg v. Dept. of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

**B.  <u>The CIA's Records Systems and Processing of FOIA Requests</u>**

Because the CIA is an intelligence agency, it must take measures to protect against the unauthorized release of classified information.  Nelson Decl. ¶ 7.  Thus, the CIA limits employee access to information in its records systems by employing a "need-to-know" policy.  Nelson Decl. ¶ 8.  The CIA implements this policy by decentralizing and compartmentalizing its records systems.  Nelson Decl. ¶ 8.  Obviously, the disadvantage of CIA's "need-to-know" policy is that the records search and retrieval processes are inefficient and time-consuming, because numerous records systems must be searched when processing a FOIA request.  Nelson Decl. ¶ 9.

The Information Management Services ("IMS"), is the initial reception point for all FOIA requests received by the CIA.  Nelson Decl. ¶ 10.  Experienced IMS information management professionals analyze each request and determine which CIA components might reasonably be expected to possess records responsive to a particular request.  *Id*.  The IMS then transmits a copy of the FOIA request to each relevant component.  *Id*.  In the event of a broad FOIA request, it is common for the IMS to transmit the request to a number of its components.  *Id*.  Because of the decentralization and compartmentalization of the CIA's records systems, each component devises its own search strategy, which includes identifying which records systems to search and what search tools, indices, and terms to employ.  *Id*.

Officers must then review any documents located during a search to determine whether they are responsive to the FOIA request.  Nelson Decl. ¶ 11.  After officers identify and remove any non-responsive documents, Information Review Officers review any remaining documents to determine whether there is classified information in the documents and which, if any, FOIA exemptions may apply.  Nelson Decl. ¶ 12.  This process is laborious and time-consuming.  *Id*.

In the course of reviewing documents for exempt information and segregability, a component frequently identifies information that it must refer to another CIA component. Id. At the very least, a component must often coordinate with another CIA component to complete its review of documents. Nelson Decl. ¶ 13. After all the components complete their respective reviews of documents, in order to comply with the law and CIA regulations, IMS professionals incorporate all of their recommendations regarding any exemptions, segregation, redactions, and release, resolving any conflicting recommendations. Nelson Decl. ¶ 14.

C. **Details of the CIA's Search for Records Responsive To Plaintiff's Request**

In responding to Plaintiff's FOIA request, the CIA conducted diligent searches of relevant systems of records that were reasonably calculated to discover any records concerning the decision to initiate an internal review of the operations of the CIA's Inspector General. Nelson Decl. ¶ 19. The CIA's search for records responsive to Plaintiff's request included the Director of Central Intelligence Agency ("DCIA") area, which includes the records systems of the DCIA Action Center, the independent offices of the Office of Inspector General ("OIG"), the Office of General Counsel, and the Office of Public Affairs. Nelson Decl. ¶ 19. These CIA components used a variety of search terms reasonably calculated to locate information responsive to Plaintiff's FOIA request, including the following terms: "internal review of operations," "CIA's Inspector General," "John L. Helgerson," "OIG," "Office of Inspector General," "OIG internal review," and "Deitz review." Id. However, these diligent searches for records failed to locate any records responsive to Plaintiff's FOIA request. Nelson Decl. ¶ 19. In a letter dated July 11, 2008, the CIA advised Plaintiff that no records responsive to its FOIA request had been located. Id. According, Plaintiff's claims herein should be dismissed.

# V. **CONCLUSION**

The CIA conducted a reasonable search and found no records responsive to Plaintiff's

FOIA request.  Accordingly, the Court should grant Defendant's motion to dismiss or

alternatively, motion for summary judgment.

 Respectfully submitted,

 /s/
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

 /s/
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

 /s/
JUDITH A. KIDWELL
Assistant United States Attorney
555 Fourth Street, N.W.- Civil Division
Room E4905
Washington, D.C. 20530
(202) 514-7250

10

### UNITED STATES DISTRICT COURT
### DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **JAMES MADISON PROJECT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No.: 08-0708 (JR)** |
| | ) | |
| **CENTRAL INTELLIGENCE AGENCY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

### <u>ORDER</u>

UPON CONSIDERATION of Defendant's Motion to Dismiss or Alternatively, Motion for Summary Judgment and attachment and exhibits thereto, Defendant's Memorandum of Points and Authorities in Support thereof, and Defendant's Statement of Material Facts To Which There Is No Genuine Issue, any Opposition thereto, any Reply, and the entire record herein, it is this _____ day of _____, 2008, hereby

**ORDERED** that Defendant's Motion To Dismiss is granted.


_____
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAMES MADISON PROJECT,     )
             )
    Plaintiff,    )
             )
   v.         ) Case No. 1:08-cv-00708 (JR)
             )
CENTRAL INTELLIGENCE AGENCY,  )
             )
    Defendant.    )
_____)

DECLARATION OF DELORES M. NELSON
INFORMATION AND PRIVACY COORDINATOR
CENTRAL INTELLIGENCE AGENCY

I, DELORES M. NELSON, hereby declare and say:

1. I am the Chief of the Public Information Programs Division, Information Review and Release Group (IRRG), Information Management Services (IMS), Office of the Chief Information Officer (CIO), Central Intelligence Agency (CIA). I have served with the CIA for approximately twenty-nine years and, in addition to my current position, have held other supervisory positions with the CIA. Since 21 April 2008, I also serve as the CIA Information and Privacy Coordinator (Coordinator).

2. I make this declaration in support of the CIA's motion to dismiss, or in the alternative, CIA's motion for summary judgment.

3.    In my capacities as Chief of PIPD and Coordinator, I am responsible for managing the Freedom of Information Act (FOIA), Privacy Act, and Executive Order 12958[1] Mandatory Declassification Review programs in the CIA.  These responsibilities include directing searches of CIA records systems pursuant to public requests for records under these programs, and coordinating the reviews of any records retrieved in such searches.

4.    As part of my official duties, I ensure that the Agency administratively processes FOIA and Privacy Act requests, including the search, retrieval, analysis, review, redaction, and release of documents, in accordance with the law and as efficiently as possible with the personnel and resources available.

5.    Through the exercise of my official duties, I am familiar with this civil action.  I make the following statements based upon my personal knowledge and the information made available to me in my official capacity.

---

[1] Executive Order 12958 was amended by Executive Order 13292.  See Exec. Order No. 13292, 68 Fed. Reg. 15,315 (Mar. 28, 2003).  All citations to Executive Order 12958 are to the Order as amended by Executive Order 13292. See Exec. Order No. 12958, 3 C.F.R. 333 (1996), reprinted as amended in 50 U.S.C.A. § 435 note at 193 (West Supp. 2008).

6.  This declaration describes the CIA's records systems, its procedures for responding to FOIA requests, and actions the CIA took in responding to Plaintiff's FOIA request.

## I.  CIA RECORDS SYSTEMS

7.  As an intelligence agency, the CIA must take measures to protect against the unauthorized release of classified information.  One way to minimize such damage is strictly to limit the amount of information to which any particular employee has access.  This practice ensures that should there be a spy within the CIA, that individual will have limited access to information, and thus limits the damage that could result should that information be mishandled.

8.  The CIA limits employee access to information by employing a "need-to-know" policy, which provides that an employee has access only to that information required to perform the employee's duties.  The CIA implements this policy through decentralizing and compartmentalizing its records systems.  In other words, all of the CIA's information is not stored in the same records system, but rather in numerous separate systems across the CIA.

9.  While the counterintelligence advantage of this practice is obvious, one disadvantage is equally obvious:  the inherent inefficiencies created in the records search and retrieval processes.  These inefficiencies affect not only the

day-to-day activities of CIA employees trying to perform their mission, but also the process of responding to FOIA requests. Because it is often the case that numerous records systems must be searched when processing a given FOIA request, it can take a considerable amount of time to locate information potentially responsive to a FOIA request.

## II.    PROCESSING OF FOIA REQUESTS

10.    IMS is the initial reception point for all FOIA requests.  Experienced IMS information management professionals analyze each request and determine which CIA components might reasonably be expected to possess records responsive to a particular request.  IMS then transmits a copy of the request to each relevant component.  When a request is broad, it is quite common for IMS to transmit the request to many components. Because the CIA's records systems are decentralized and compartmented, each component must then devise its own search strategy, which includes identifying which of its records systems to search as well as what search tools, indices, and terms to employ.  The information management professionals in each component conducting FOIA searches are the same professionals searching records to support the component's daily mission.

11.    Officers must review any documents located during a search to determine whether they are responsive to the FOIA

request.  Because of the nature of a particular records system--
or the search tools, indices, or terms employed-- a search may
locate many documents that are not responsive to the request.

12.  After officers identify and remove the non-responsive
documents, the Information Review Officers must then review the
remaining documents to determine which, if any, FOIA exemptions
apply, and whether they can reasonably segregate non-exempt
information from exempt information.  In evaluating responsive
documents, officers must segregate exempt information to avoid
the inadvertent disclosure of classified information,
information concerning intelligence sources and methods, or
other information protected by FOIA exemptions.  This process is
laborious and time-consuming.

13.  In the course of reviewing documents for exempt
information and segregability, a component frequently identifies
information that it must coordinate with or refer to another CIA
component or another agency because the other component or
agency originated the information or otherwise has an equity in
it.[2]  This coordination and referral process itself can be quite
time-consuming because other components and agencies have their
own mission and FOIA priorities.

14.  When all of the components and agencies complete their
respective reviews, IMS professionals incorporate all of their

---

[2] See Exec. Order No. 12958 § 3.6(b).

recommendations regarding exemptions, segregation, redaction, and release, resolve conflicting recommendations, and ensure that release or withholding determinations comply with the law and published CIA regulations.  A review is then conducted from a corporate perspective on behalf of the entire CIA and additional exempt information that reflects overall CIA equities may be identified.  A final record copy of each document is then produced and a response is provided to the requestor.

### III.  PLAINTIFF'S FOIA REQUEST

15.  By letter dated 18 October 2007, plaintiff submitted a FOIA request to the CIA for the following records:

> "copies of all internal Central Intelligence Agency ("CIA") documents pertaining to discussions concerning the decision to initiate an internal review of the operations of the CIA's Inspector General ("IG"), John Helgerson, and of the IG's Office as a whole."

A true and correct copy of Plaintiff's 18 October 2007 letter is attached as Exhibit A hereto.

16.  By letter dated 5 November 2007, the CIA acknowledged plaintiff's request and assigned it reference number F-2008-00103.  In addition, the CIA also granted plaintiff's request for a fee waiver but denied plaintiff's request for expedited processing.  A true and correct copy of the CIA's 5 November 2007 letter is attached as Exhibit B hereto.

17.  By letter dated 3 March 2008, the CIA informed plaintiff's counsel that plaintiff's request was still being

processed, and that CIA was unable to give a definite date for completion of the request, as had been discussed via telephone with plaintiff's counsel on 21 February 2008.[3]  A true and correct copy of CIA's 3 March 2008 letter is attached as Exhibit C hereto.

18.  On 21 April 2008, plaintiff filed a Complaint asking the Court to order disclosure of the requested records and attorney's fees.

19.  In early July 2008, the CIA concluded its processing of plaintiff's request.  The CIA processed plaintiff's request in accordance with the procedures described above.  The CIA conducted diligent searches of relevant systems of records that were reasonably calculated to discover any records concerning the decision to initiate an internal review of the operations of the CIA's Inspector General.  The CIA search included the Director of Central Intelligence Agency ("DCIA") area, which includes the records systems of the DCIA Action Center ("DAC") and the independent offices of the Office of Inspector General ("OIG"), the Office of General Counsel ("OGC"), and the Office of Public Affairs ("OPA").  These offices used a variety of search terms reasonably calculated to locate information responsive to plaintiff's FOIA request, including, for example: "internal review of operations," "CIA's Inspector General,"

---

[3] Exhibit C states the phone call was 21 February 2007 (prior to plaintiff's request), but the call actually took place 21 February 2008.

"John L. Helgerson," "OIG," "Office of Inspector General," "OIG internal review," and "Deitz review." These diligent searches failed to locate any records concerning the decision to initiate an internal review of the operations of the CIA's Inspector General, and thus no records that were responsive to plaintiff's request have been located. By letter dated 11 July 2008, the CIA informed plaintiff's counsel that CIA was unable to locate any records responsive to plaintiff's request. A true and correct copy of CIA's 11 July 2008 letter is attached as Exhibit D hereto.

* * * *

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed this 14th day of July, 2008.

Delores M. Nelson
Information and Privacy Coordinator
Central Intelligence Agency

EXHIBIT A

*F-2008-00103*

# The James Madison Project
## 1250 Connecticut Avenue, N.W.
### Suite 200
### Washington, D.C. 20036

(202) 498-0011
(202) 330-5610 fax

E-Mail: JaMadPro@aol.com
http://www.jamesmadisonproject.org

18 October 2007

Scott A. Koch
Central Intelligence Agency
Information and Privacy Coordinator
Washington, D.C. 20505

Re: <u>FOIA Request – Internal Investigation of IG's Office</u>

Dear Mr. Koch:

This is a request on behalf of The James Madison Project under the Freedom of Information Act, 5 U.S.C. § 552, <u>et seq.</u>, for copies of all internal Central Intelligence Agency ("CIA") documents pertaining to discussions concerning the decision to initiate an internal review of the operations of the CIA's Inspector General ("IG"), John Helgerson, and of the IG's Office as a whole. Enclosed please find copies of news articles from *The New York Times, Los Angeles Times,* and *USA Today* referring to confirmation by the CIA that Director General Michael Hayden has ordered the internal review.

We are hereby requesting a waiver of all fees. The James Madison Project is a non-profit organization under the laws of the District of Columbia and has the ability to disseminate information on a wide scale. Stories concerning our activities have received prominent mention in many publications including, but not limited to, *The Washington Post, The Washington Times, St. Petersburg Tribune, San Diego Union Tribune, European Stars & Stripes, Christian Science Monitor, U.S. News and World Report, Mother Jones* and *Salon Magazine*. Our website, where much of the information received through our FOIA requests is or will be posted for all to review, can be accessed at

*"Knowledge will forever govern ignorance, and a people who mean to be their own Governors, must arm themselves with the power knowledge gives."*

*James Madison, 1832*

The James Madison Project

*http://www.jamesmadisonproject.org.* Prior requests submitted by our organization have all received fee waivers.

We are also asking for expedited processing. The 1996 amendments to the Freedom of Information Act permit expedited processing when a "compelling need" exists. See 5 U.S.C. § 552 (a)(6)(E)(v). Specifically, "compelling need" means "with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." Id. at § 552 (a)(6)(E)(v)(II). The CIA has adopted internal regulations governing expedited processing and has determined that a "compelling need" is deemed to exist where the "request is made by a person primarily engaged in disseminating information and the information is relevant to a subject of public urgency concerning an actual or alleged Federal government activity." See 32 C.F.R. § 1900.34(c)(2).

There can be no question that the information sought would contribute to the public's understanding of government operations or activities and is in the public interest. Over the course of the Global War on Terror ("GWOT"), numerous documents from a host of executive branch agencies have been released, detailing the legal and policy considerations that have formed the basis for discussions on a wide-range of national security policies. One example was the DOJ's disclosure of memoranda that originated in its Office of Legal Counsel and which formed a critical component of U.S. policies concerning detention of terrorist suspects. Given the highly-publicized nature of this particular controversy and its relation to the activities of the CIA's internal "watchdog," an office which has recently produced reports highlighting critical failures by the CIA in its prosecution of the GWOT, detailing the span of arguments considered prior to the authorization of this internal review will clearly contribute to the public's understanding of government operations or activities.

With respect to expedited processing, as explained above, JMP has been and continues to be primarily engaged in disseminating information on a wide scale and clearly falls within the scope of the statute. A "compelling need" exists due to the critically important political and legal questions that are clearly implicated by the decision to authorize the internal review of the IG's Office. Not only does the review have the potential to serve, either in mere appearance or in actual reality, as evidence of the politicization of a statutorily-designated non-political division within the CIA, but it also raises the possibility of constituting unlawful interference in the activities of the IG and obstruction of the IG's statutory obligations.

---

*"Knowledge will forever govern ignorance, and a people who mean to be their own Governors, must arm themselves with the power knowledge gives."*

*James Madison, 1822*

The James Madison Project

The CIA is required by law to respond to this request within 20 working days. However, the CIA is required to issue a determination on the request for expedited processing "within 10 days after the date of the request." 5 U.S.C. § 552 (a)(6)(E)(ii)(I). Therefore, the CIA's response is due on or before October 28, 2007. Failure to timely comply may result in the filing of a civil action against your agency in the United States District Court for the District of Columbia. Please note that the denial of expedited processing should not interfere with the normal processing of these requests.

If you deny all or part of this request, please cite the specific exemptions you believe justifies your refusal to release the information or permit the review and notify us of your appeal procedures available under the law. In excising material, please "black out" rather than "white out" or "cut out".

Your cooperation in this matter would be appreciated. If you wish to discuss this request, please do not hesitate to contact me at either (202) 498-0011 or my law office at (202) 454-2809.

Finally, please have all return correspondence addressed specifically to my attention to ensure proper delivery.

Sincerely,

Mark S. Zaid
Executive Director

"Knowledge will forever govern ignorance, and a people who mean to be their own Governors, must arm themselves with the power knowledge gives."

James Madison, 1822

Watchdog of C.I.A. Is Subject of C.I.A. Inquiry - New York Times          http://www.nytimes.com/2007/10/11/washington/12intel.html?_r=1&p...

The New York Times



October 11, 2007

# Watchdog of C.I.A. Is Subject of C.I.A. Inquiry

By MARK MAZZETTI and SCOTT SHANE

WASHINGTON, Oct. 11 — The director of the Central Intelligence Agency, Gen. Michael V. Hayden, has ordered an unusual internal inquiry into the work of the agency's inspector general, whose aggressive investigations of the C.I.A.'s detention and interrogation programs and other matters have created resentment among agency operatives.

A small team working for General Hayden is looking into the conduct of the agency's watchdog office, which is led by Inspector General John L. Helgerson. Current and former government officials said the review had caused anxiety and anger in Mr. Helgerson's office and aroused concern on Capitol Hill that it posed a conflict of interest.

The review is particularly focused on complaints that Mr. Helgerson's office has not acted as a fair and impartial judge of agency operations but instead has begun a crusade against those who have participated in controversial detention programs.

Any move by the agency's director to examine the work of the inspector general would be unusual, if not unprecedented, and would threaten to undermine the independence of the office, some current and former officials say.

Frederick P. Hitz, who served as C.I.A. inspector general from 1990 to 1998, said he had no first-hand information about current conflicts inside the agency. But Mr. Hitz said any move by the agency's director to examine the work of the inspector general would "not be proper."

"I think it's a terrible idea," said Mr. Hitz, who now teaches at the University of Virginia. "Under the statute, the inspector general has the right to investigate the director. How can you do that and have the director turn around and investigate the I.G.?"

A C.I.A. spokesman strongly defended the inquiry on Thursday, saying General Hayden supported the work of the inspector general's office and had "accepted the vast majority of its findings."

"His only goal is to help this office, like any office at the agency, do its vital work even better," said Paul Gimigliano, the spokesman.

Current and former intelligence officials said the inquiry had involved formal interviews with at least some of the inspector general's staff and was perceived by some agency employees as an "investigation," a label Mr. Gimigliano rejected.

Several current and former officials interviewed for this article spoke on condition of anonymity because of the sensitivity of the inquiry.

The officials said the inquiry was being overseen by Robert L. Deitz, a trusted aide to the C.I.A. director and a lawyer who served as general counsel at the National Security Agency when General Hayden ran it. Michael Morrell, the agency's associate deputy director, is another member of the group, officials said.

Reached by phone Thursday, both Mr. Helgerson and Mr. Dietz declined to comment.

In his role as the agency's inspector general since 2002, Mr. Helgerson has investigated some of the most controversial programs the C.I.A. has begun since the Sept. 11 attacks, including its secret program to detain and interrogate high value terrorist suspects.

Under federal procedures, agency heads who are unhappy with the conduct of their inspectors general have at least two places to file complaints. One is the Integrity Committee of the President's Council on Integrity and Efficiency, which oversees all the inspectors general. The aggrieved agency head can also go directly to the White House.

If serious accusations against an inspector general are sustained by evidence, the president can dismiss him.

Both those routes avoid the awkward situation officials describe at the C.I.A. and preserve the independence of the inspector general.

But one intelligence official who supports General Hayden's decision to begin an internal inquiry said that going outside the agency would "blow things way out of proportion."

A report by Mr. Helgerson's office completed in the spring of 2004 warned that some C.I.A.-approved interrogation procedures appeared to constitute cruel, inhuman and degrading treatment, as defined by the international Convention Against Torture.

Some of the inspector general's work on detention issues was conducted by Mary O. McCarthy, who was fired from the agency last year after being accused of leaking classified information. Officials said Mr. Helgerson's office was nearing completion on a number of inquiries into C.I.A. detention, interrogation, and "renditions" — the practice of seizing suspects and delivering them to the authorities in other nations.

The inspector general's office also rankled agency officials when it completed a withering report about the C.I.A.'s missteps before the Sept. 11 attack — a report that recommended "accountability boards" to consider disciplinary action against a handful of senior officials.

When the report was made public in August, General Hayden took the rare step of pointing up criticisms of the report by the former intelligence director, George J. Tenet and his senior aides, saying many officials "took strong exception to its focus, methodology and conclusions."

Some agency officers believe the aggressive investigations by Mr. Helgerson amount to unfair second guessing of intelligence officers who are often risking their lives in the field.

"These are good people who thought they were doing the right thing," said one former agency official. "And now they are getting beat up pretty bad and they have to go out an hire a lawyer."

Agency officials have also criticized the length of the inspector general's investigations, some lasting more

than five years, which have derailed careers and generated steep legal bills for officers under scrutiny.

The former agency official called General Hayden's review of the inspector general "a smart move."

Since taking over at the C.I.A. in 2006, General Hayden has taken several steps to soothe anger within the agency's clandestine service, which has been buffeted in recent years by a string of prolonged investigations.

He has brought back two veteran agency operatives, Steven R. Kappes and Michael J. Sulick, both of whom angrily left during the tenure of Porter J. Goss, the C.I.A. director, to assume top posts at the spy agency. He also supported the president's nomination of John A. Rizzo, a career agency lawyer and someone well-respected by covert operatives, to become the C.I.A's general counsel.

Mr. Rizzo withdrew his nomination to the post last month in the midst of intense opposition from Senate Democrats.

"Director Hayden has done a lot of things to convince the operators that he's looking out for them, and putting the I.G. back in its place is part of this," said John Radsan, who worked as a C.I.A. lawyer from 2002 to 2004 and is now a professor at William Mitchell College of Law.

Mr. Hitz and other former C.I.A. officials said tensions between the inspector general and the rest of the agency were natural. Conflicts most often arise when the inspector general reviews the actions of the agency's directorate of operations, now known as the National Clandestine Service, which recruits agents and hunts terrorists overseas.

"The perception is like in a police department between street cops and internal affairs," said A. B. Krongard, the agency's executive director from 2001 to 2004.

Resentment of the inspector general's work has also at times extended to the agency's general counsel's office, whose legal judgment is sometimes second-guessed by after-the-fact investigations. "In some of our reports, we were quite critical of the advice given by the general counsel," Mr. Hitz said.

The C.I.A., created in 1947, had an in-house inspector general selected by the director starting in 1952 who investigated failed operations like the Bay of Pigs invasion against Cuba in 1961.

But that position was viewed as lacking clout and independence, and in 1989, partly in response to the Iran-contra affair, Congress created an independent inspector general at the agency, appointed by the president and reporting to both the director and to Congress.

Copyright 2007 The New York Times Company

Lawmakers back CIA inspector general - USATODAY.com          http://usatoday.printthis.clickability.com/pt/cpt?action=cpt&title=Lawm...




**USA TODAY**

PRINTTHIS
Powered by Clickability

SAVE THIS | EMAIL THIS | Close

Click to Print

## Lawmakers back CIA inspector general

WASHINGTON (AP) — Congress will "aggressively preserve" the independence of the CIA's internal investigator, the chairman of the House Intelligence Committee said Friday in response to reports that the CIA has launched a critical review of its inspector general's work.

"The initiation of this investigation, if accurately reported, is troubling," Rep. Silvestre Reyes, D-Texas, said in a statement.

The intelligence agency confirmed that CIA Director Gen. Michael Hayden has ordered an internal review into the operations of the agency's inspector general, John Helgerson. In a series of reports on the agency's conduct before and after the Sept. 11 attacks, Helgerson has criticized senior figures at the spy agency, including former Director George Tenet and officers involved in the CIA's detention of terrorist suspects.

Reyes is slated to meet with CIA leadership next week to discuss the matter. The House Intelligence Committee had been unaware of the investigation until it was reported Friday in The New York Times and the Los Angeles Times, said committee spokeswoman Kira Maas.

The investigation is causing concern on Capitol Hill that the CIA is trying to muzzle one of its sharpest critics and the only officially independent voice inside the secretive agency, members of the House and Senate Intelligence committees said Friday.

In a statement Thursday night, a CIA spokesman said Hayden rejects that characterization of the probe and firmly believes in the inspector general's office and its work.

"Director Hayden ... has, since taking the helm at CIA, accepted the vast majority of its findings. His only goal is to help this office, like any other at the agency, do its vital work even better," CIA spokesman Paul Gimigliano said.

The review is being led by Robert Deitz, senior counsel to Hayden and the general counsel at the National Security Agency when Hayden was NSA director.

"That's why he asked a seasoned observer like Bob Deitz to take a look at the Office of Inspector General and, if need be, suggest specific improvements for consideration by the unit itself," Gimigliano said.

"He — like everyone else involved — comes to this task with just one preconception: an absolute belief in the value of an independent, rigorous Office of Inspector General," Gimigliano said.

Gimigliano would not specify what kind of improvements might be needed or considered in the IG office. He said that Helgerson was aware of this review and that congressional aides have been briefed.

Helgerson has been highly critical of the CIA. In a report in August, for example, he concluded that Tenet and other senior leaders never developed a comprehensive plan to stop al-Qaeda and missed crucial opportunities to thwart two hijackers in the run-up to the Sept. 11 attacks. Under congressional orders, the agency recently declassified portions of the embarrassing findings.

Helgerson has also been highly critical, in classified reports, of the agency's treatment of detainees.

The newspaper reports said the review was focusing on complaints that Helgerson's office has not been impartial and has assumed guilt on the part of agency operatives, particularly those who participated in the agency's detention of terror suspects.

Copyright 2007 The Associated Press. All rights reserved. This material may not be published, broadcast, rewritten or redistributed.

Share this story:

Mixx it     Digg     del.icio.us     Newsvine     Reddit     Facebook     What's this?

**Find this article at:**
http://www.usatoday.com/news/washington/2007-10-12-cia-inspector_N.htm?csp=34

Click to Print

SAVE THIS | EMAIL THIS | Close

Check the box to include the list of links referenced in the article.

Copyright 2007 USA TODAY, a division of Gannett Co. Inc.

Advertisement

Mixx it
Cool ways to share

• Digg
• del.icio.us
• Newsvine
• Reddit
• Facebook
What's this?

**Paying Too Much**
For Auto Insurance in
Annapolis
MD?

▸ ZIP code where you
park at night

▸ Do you currently have
auto insurance?
○ Yes  ○ No

▸ Have you had your US
driver's license for
more than 3 years?
○ Yes  ○ No

▸ Has any driver in your
household had 2 or
more accidents or
moving violations in
the last 2 years?
○ Yes  ○ No

Get Quotes!


Auto Insurance

**latimes.com.** Los Angeles Times.

http://www.latimes.com/news/nationworld/nation/la-na-cia12oct12,0,2473391.story?coll=la-home-center
*From the Los Angeles Times*

## CIA Investigates conduct of its inspector general

The internal inquiry is prompted by senior agency officials who say they were criticized unfairly in the watchdog's reports on secret overseas prisons.
By Greg Miller
Los Angeles Times Staff Writer

October 12, 2007

WASHINGTON — CIA Director Michael V. Hayden has mounted a highly unusual challenge to the agency's chief watchdog, ordering an internal investigation of an inspector general who has issued a series of scathing reports sharply critical of top CIA officials, according to government officials familiar with the matter.

The move has prompted concerns that Hayden is seeking to rein in an inspector general who has used the office to bring harsh scrutiny of CIA figures including former Director George J. Tenet and undercover operatives running secret overseas prison sites.

The inquiry is focused on the conduct of CIA Inspector General John L. Helgerson and his office. Officials said it was aimed in particular at evaluating whether his office was fair and impartial in its scrutiny of the agency's terrorist detention and interrogation programs. But officials said the probe also spanned other subjects and had expanded since it was launched several months ago.

U.S. intelligence officials who are concerned about the inquiry said it was unprecedented and could threaten the independence of the inspector general position. The probe "could at least lead to appearances he's trying to interfere with the IG, or intimidate the IG or get the IG to back off," said a U.S. official familiar with the probe.

Frederick P. Hitz, who served as the CIA's inspector general from 1990 to 1998, said the move would be perceived as an effort by Hayden "to call off the dogs."

"What it would lead to is an undercutting of the inspector general's authority and his ability to investigate allegations of wrongdoing," Hitz said. "The rank and file will become aware of it, and it will undercut the inspector general's ability to get the truth from them."

But other officials described the probe as a chance to turn the tables on an inspector general who has been accused by some of his targets of treating career officers unfairly and letting personal biases undermine his objectivity.

"There is across-the-board distrust with the IG function and disrespect for Helgerson, who many believe has a personal agenda on issues," said a former high-ranking CIA official who, like others interviewed, spoke on condition of anonymity because of the classified nature of the inspector general's work.

Helgerson, the former official said, "always went in with a presumption of guilt."

Helgerson oversees a large staff of investigators whose activities include detailed examinations of highly classified programs and routine audits of mundane agency functions. He has served as inspector general at the CIA since 2002.

The CIA probe comes at a time when the powers of inspectors general in agencies throughout the federal government are under renewed debate. This month, the Bush administration threatened to veto a House bill that would strengthen the independence of inspectors general by giving them seven-year terms and permit the White House to fire them only for cause.

Hayden, an Air Force general who became CIA director last year, has not been involved in any public clashes with Helgerson. But Hayden has been a staunch defender of the Bush administration's counter-terrorism programs and has publicly lamented what he describes as a tendency by outside observers and critics to second-guess the activities of the nation's intelligence agencies.

In response to questions about the unusual arrangement, CIA spokesman George Little said Hayden "firmly believes that the work of the office of inspector general is critical to the entire agency, and, since taking the helm at CIA, he has accepted the vast majority of its findings." However, Hayden's goal is to "help the office do even better," Little said.

The CIA's review is being led by Robert Deitz, an attorney with long-standing ties to Hayden who was brought in to serve as a senior counselor to the director. Deitz, who served as general counsel at the National Security Agency when Hayden was director there in the 1990s, has assembled a small team of investigators to conduct the probe.

Little, the CIA spokesman, said Deitz came to the post with "an absolute belief in the value of an independent, rigorous Office of Inspector General."

The inquiry has been driven in large part by senior operations officers who have complained to Hayden that they were unfairly criticized by Helgerson in classified reviews of the CIA's secret prisons programs.

The probe is set up to examine "how these people were treated, how the investigations were conducted," said an official familiar with it.

The official declined to discuss the conclusions of the internal investigations, which are classified, but said that "the people who are upset didn't think they were glowing reviews."

Among the issues being explored are whether agency officers were given adequate opportunity to defend their actions, and whether the inspector general's conclusions accurately represented their roles.

Officials declined to name the CIA officers behind the complaint. One former official said, "We're talking about undercover people at mid- to senior-grade ranks."

The CIA created a network of secret overseas prisons shortly after the Sept. 11 attacks, and it has faced severe international criticism for employing harsh interrogation tactics as well as a program known as "extraordinary rendition," in which prisoners have been transferred to countries known to use torture.

To date, officials said, the inquiry has largely involved gathering information and statements from CIA officers who came under scrutiny in Helgerson's review.

But officials expressed concern that the probe would also involve reviewing the inspector general's files. Such a step could have a dramatic chilling effect, officials said, making agency employees reluctant to cooperate with future investigations for fear that their involvement and the information they provide would be exposed.

The focus on the prison program represents an expansion of a probe that officials said began several months ago into the relationship between Helgerson's office and that of the CIA general counsel.

Officials said Hayden was concerned about friction between the two offices and tapped Deitz to explore the matter. The nature of the friction was unclear but involved complaints that Helgerson had overstepped his role by offering legal opinions on agency programs.

One former high-ranking CIA official said Helgerson has not shied away from taking positions in heated internal policy debates. The former official recalled attending staff meetings in which Helgerson expressed opposition to agency involvement in handling detainees as part of the war on terrorism.

A career CIA officer who holds degrees in political science, Helgerson had previously served as chief of the agency's analytic branch as well as head of the National Intelligence Council, which produces authoritative reports on key national security issues.

Helgerson has become an unusually high-profile occupant of the position largely because his tenure has coincided with a series of historic intelligence blunders.

An examination of failures leading up to the Sept. 11 attacks was sharply critical of Tenet and other senior CIA officials, saying they "did not discharge their duties in a satisfactory manner," and calling for the creation of special in-house panels to determine whether they should be reprimanded.

The CIA had fought to keep that report secret. But Hayden reluctantly released its key findings in August after Congress passed legislation requiring the CIA to declassify the document's executive summary.

The conclusions were denounced by many targets of the probe, including Tenet, who issued a statement saying, "The IG is flat wrong."

The tone of the report also angered officials who were not singled out for criticism. Robert Richer, who was the assistant deputy director for operations at the CIA before retiring in 2005, said that shortly before he left the agency, he sent a memo to then-Director Porter J. Goss requesting that the inspector general be reviewed for his impartiality.

"The basis of it was the 9-11 report," Richer said in an interview, referring to Helgerson's examination of Sept. 11-related failures. Goss did not act on that request, and it is unclear whether it played any role in Hayden's decision to initiate a review of Helgerson's conduct.

Because of its role, the inspector general's office is viewed with distrust and suspicion by other parts of the agency, particularly case officers who operate overseas and "feel they're being investigated by people who don't fully understand their business," said one former CIA official.

Helgerson's office has also been accused of leaks to the press. Goss in 2006 fired CIA officer Mary O. McCarthy, who worked in the inspector general's office, after she was accused of inappropriate contacts with journalists, including a Washington Post reporter who wrote articles about the CIA's secret overseas prisons.

The relationship between the CIA director and the inspector general is complicated. The law creating the position specifies that the watchdog "shall report directly to and be under the general supervision of the director."

The law also makes clear that the CIA director can ignore recommendations from an inspector general and even prohibit the office from initiating investigations.

But Hitz, the former CIA inspector general, and others said that the position has traditionally operated with a great deal of autonomy, and that there are other mechanisms for holding an inspector general accountable. In particular, a 1992 executive order established what is known as the

Los Angeles Times: CIA investigates conduct of its inspector general          http://www.latimes.com/news/nationworld/nation/la-na-cia12oct12,0,78...

President's Council on Integrity and Efficiency and gave it authority to evaluate the work of inspectors general in agencies across the government.

"I don't think it's appropriate for the IG to be in an offline way investigated by his superior," Hitz said. "If the director has a problem with the way the IG is performing his job, he can go to the Congress, to the president's intelligence oversight board, or he can go to the president himself."

greg.miller@latimes.com

If you want other stories on this topic, search the Archives at latimes.com/archives.
TMSReprints
Article licensing and reprint options

Copyright 2007 Los Angeles Times | Privacy Policy | Terms of Service
Home Delivery | Advertise | Archives | Contact | Site Map | Help

PARTNERS:

10/14/2007 3:03 PM

**EXHIBIT B**



Central Intelligence Agency

Washington, D.C. 20505

Mr. Mark S. Zaid
Executive Director
The James Madison Project
1250 Connecticut Avenue, NW
Suite 200
Washington, DC 20036

Reference: F-2008-00103

Dear Mr. Zaid:

On 19 October 2007 the Office of the Information and Privacy Coordinator received your 18 October 2007 Freedom of Information Act (FOIA) request for "copies of all internal Central Intelligence Agency ('CIA') documents pertaining to discussions concerning the decision to initiate an internal review of the operations of the CIA's Inspector General ('IG'), John Helgerson, and of the IG's Office as a whole." We have assigned your request the reference number above. Please use this number when corresponding with us so that we can identify it easily.

We accept your request and will process it according to the FOIA, 5 U.S.C. § 552, as amended, and the CIA Information Act, 50 U.S.C. § 431, as amended. Unless you object, we will limit our search to CIA-originated records existing through the date of this acceptance letter.

As a matter of administrative discretion, we will waive the fees associated with processing your FOIA request in this instance. Therefore, your request for a fee waiver is granted.

You have requested expedited processing. We handle all requests in the order we receive them: that is, "first-in, first-out." We make exceptions to this rule only when a requester establishes a compelling need under the standards in our regulations. A "compelling need" exists: 1) when the matter involves an imminent threat to the life or physical safety of an individual, or 2) when a person primarily engaged in disseminating information makes the request and the information is relevant to a subject of public urgency concerning an actual or alleged Federal government activity. Your request does not demonstrate a "compelling need" under these criteria and, therefore, we deny your request for expedited processing.

The large number of FOIA requests CIA receives has created unavoidable delays making it unlikely that we can respond within the 20 working days the FOIA requires. You have the right to consider our honest appraisal as a denial of your request and you may appeal to the Agency Release Panel. A more practical approach would permit us to continue processing your request and respond to you as soon as we can. You will retain your appeal rights and, once you receive the results of our search, can appeal at that time if you wish. We will proceed on that basis unless you object.

Sincerely,

Scott Koch
Information and Privacy Coordinator

EXHIBIT C

Central Intelligence Agency



Washington, D.C. 20505

MAR 0 3 2008

Mr. Mark S. Zaid
Executive Director
The James Madison Project
1250 Connecticut Avenue, NW
Suite 200
Washington, D.C. 20036

Reference: F-2008-00103

Dear Mr. Zaid:

This concerns your 18 October 2007 Freedom of Information Act (FOIA) request for **"copies of all internal Central Intelligence Agency ('CIA') documents pertaining to discussions concerning the decision to initiate an internal review of the operations of the CIA's Inspector General ('IG'), John Helgerson, and of the IG's Office as a whole."**

In a telephone conversation with one of my staff members on 21 February 2007, Mr. Brad Moss of your office, requested the status of this request.

Your request is still being processed. We can appreciate your concern with not having received a final response to your request. Please be assured that it is the overwhelming number of requests and their complexity that causes delays in our responses. At the present, our workload comprises thousands of FOIA, Privacy Act, and Executive Order requests, and it is our policy to handle each on a first-in, first-out basis that is the most equitable to all requesters. Again, we regret that we are unable to give you a definite date for completion and ask for your continued cooperation.

Sincerely,

Scott Koch
Information and Privacy Coordinator

EXHIBIT D



Washington, D.C. 20505

JUL 11 2008

Mr. Mark S. Zaid
Executive Director
The James Madison Project
1250 Connecticut Avenue, NW
Suite 200
Washington, D.C. 20036

Reference: F-2008-00103

Dear Mr. Zaid:

This is a final response to your 18 October 2007 Freedom of Information Act (FOIA) request and subsequent litigation for **"copies of all internal Central Intelligence Agency ('CIA') documents pertaining to discussions concerning the decision to initiate an internal review of the operations of the CIA's Inspector General ('IG'), John Helgerson, and of the IG's Office as a whole."**

We processed your request in accordance with the FOIA, 5 U.S.C. § 552, as amended, and the CIA Information Act, 50 U.S.C. § 431, as amended. Our processing included a search for records as described in our 5 November 2007 acceptance letter existing through the date of that letter.

We did not locate any records responsive to your request.

The CIA regulations governing administrative appeals are set forth at 32 C.F.R. sect. 1900.42. Those regulations state that no appeal shall be accepted if the information in question is the subject of pending litigation in the federal courts. Therefore, as a result of James Madison Project v. CIA, Case No. 1:08-cv-00708, currently pending in the U.S. District Court for the District of Columbia, and this letter, the Agency has completed the administrative processing of your FOIA request.

Sincerely,

Delores M. Nelson
Information and Privacy Coordinator