UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES MADISON PROJECT, | ) </br> ) |
| Plaintiff, | ) </br> ) |
| v. | ) Civil Action No.: 08-0708 (JR) </br> ) |
| CENTRAL INTELLIGENCE AGENCY, | ) </br> ) |
| Defendant. | ) </br> ) |

MEMORANDUM OF POINTS AND AUTHORITIES
IN REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT[1]

Plaintiff states that it "commenced this litigation pursuant to the Freedom of Information Act to obtain copies of internal Central Intelligence Agency ("CIA") documents pertaining to an internal review of the CIA's Inspector General, John Helgerson ("Helgerson") and of the Office of the Inspector General ("OIG")." Plaintiff's Opposition ("Plff. Opp.") at 1. However, Plaintiff's FOIA request was not that broad.

Plaintiff's FOIA request was limited in that it requested "copies of all internal Central Intelligence Agency ("CIA") documents *pertaining to discussions concerning the decision to initiate an internal review* of the operations of the CIA's Inspector general ("IG"), John Helgerson, and of the IG's Office as a whole." (emphasis added.) *See* Second Declaration of Delores M. Nelson ("2d Nelson Decl."), Defendant's Attachment A, ¶ 2. To now suggest that its FOIA request was much broader and argue that Defendant's search was inadequate, is without merit.

---

[1] Defendant filed a motion to dismiss or alternatively, for summary judgment. Plaintiff has failed to address Defendant's motion to dismiss.

## I. DEFENDANT CONDUCTED A REASONABLE SEARCH FOR RECORDS RESPONSIVE TO PLAINTIFF'S NARROW FOIA REQUEST

### A. The CIA's End-Date Was Reasonable

Plaintiff cites *McGehee v. CIA*, 697 F.2d 1096, 1101 (D.C. Cir. 1983), in arguing that the CIA's imposition of an "end-date" of November 5, 2007, was unreasonable. Plaintiff's reliance on this case is misplaced. The Court in the *McGhee* case found that imposition of an end-date to the first 35 days, in light of the agency's two and one-half year delayed response was unreasonable. In this case, there is only approximately eight months between the time of the request and CIA's response. More importantly, in light of the fact that the Plaintiff's FOIA request was limited to requesting documents *pertaining to discussions concerning the decision to initiate an internal review,* the CIA reasonably "searched for records that would have pre-dated the announcement of the review of the IG's office." *See* 2d Nelson Decl. ¶ 2. The CIA determined that November 5, 2007, would be a reasonable cut-off date in terms of providing a temporal limit to the search for responsive records. *See* 2d Nelson Decl. ¶ 4. That date was reasonable, because it post-dates the decision to conduct the internal review. *Id*. Thus, there is absolutely nothing to support Plaintiff's speculative argument that "untold numbers of responsive records were created during those eight months." Plff. Opp. at 10.

### B. Defendant's Search Was Adequate In Light of Plaintiff's Narrow Request

Plaintiff argues that Defendant's search was inadequate because it did not turn up records of a ten-month investigation or records that would have been mandated by a federal statute, i.e., "a classified semiannual report." Plf. Oppo. at 12-13, FN8. These arguments are unavailing.

"[I]t is the requester's responsibility to frame requests with sufficient particularity to

ensure that searches are not unreasonably burdensome, and to enable the searching agency to determine precisely what records are being requested." *Assassination Archives and Research Center, Inc.*, 720 F.Supp. 217, 219 (D.D.C. 1989) (citing *Yeager v. DEA*, 678 F.2d 315 (D.C. Cir. 1982). "The rationale for this rule is that FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters." *Id*. An agency's duty is only to conduct a search reasonably calculated to uncover all relevant documents. *See Kowalczyk v. Department of Justice*, 73 F.3d 386, 388 (D.C. Cir. 1996). The agency is not required to speculate about potential leads. *Id*. Furthermore, the agency is not required to exercise "clairvoyant capabilities" to determine the nature of a plaintiff's request. *See Hudgins v. IRS*, 620 F.Supp. 19, 21 (D.D.C. 1985) (citing *Weisberg v. Department of Justice*, 705 F.2d 1344 (D.C. Cir. 1983)).

"Because Plaintiff's request was so narrow, the CIA did not search for records that would have been produced during the review of the IG, or the office as a whole." 2d Nelson Decl. ¶ 2. Plaintiff cannot now broaden that request in the midst of litigation. It is illogical to think that a classified semiannual report would be responsive to a FOIA request asking for documents pertaining to discussions concerning a decision to initiate an action. Moreover, the agency was not obligated to search for records concerning any ten month internal investigation when Plaintiff only requested records pertaining to the discussions about the initiation of such an investigation.[2]

## II. THE AGENCY'S DECLARATIONS ARE NOT CONCLUSORY

The agency's declarations in this case contain sufficient specificity to allow the Court to determine the reasonableness of its decisions about where to search. The agency's initial declaration ("Nelson Decl."), which was submitted with its motion to dismiss or alternatively

---

[2] In fact, it is Defendant's understanding that Plaintiff has now filed a new FOIA request.

motion for summary judgment, lists the various components that were searched and specific terms that were used in the searches.³  *See* Declaration of Delores M. Nelson, ¶ 19.  The agency provided additional information in this regard in its second declaration.  *See* 2d Nelson Decl. ¶ 3.  Contrary to Plaintiff's assertions, both of these declarations are quite specific and clearly demonstrate that the agency conducted a search reasonably calculated to locate information responsive to Plaintiff's narrow FOIA request.

## Conclusion

For the foregoing reasons and those provided in Defendant's motion to dismiss or alternatively, motion for summary judgment, this case should be dismissed or alternatively, Defendant CIA should be granted judgment as a matter of law.

Respectfully submitted,

/s/
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

/s/
JUDITH A. KIDWELL
Assistant United States Attorney
555 Fourth Street, N.W.- Civil Division
Room E4905
Washington, D.C. 20530
(202) 514-7250

---

³ These terms included "internal review of operations," "CIA's Inspector General," "John L. Helgerson," "OIG," "Office of Inspector General," "OIG internal review," and "Deitz review."

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAMES MADISON PROJECT,            )
                                  )
        Plaintiff,                )
                                  )
    v.                            )   Case No. 1:08-cv-00708 (JR)
                                  )
CENTRAL INTELLIGENCE AGENCY,      )
                                  )
        Defendant.                )
_____)

## SECOND DECLARATION OF DELORES M. NELSON
## INFORMATION AND PRIVACY COORDINATOR
## CENTRAL INTELLIGENCE AGENCY

I, DELORES M. NELSON, hereby declare and say:

1. I am the Chief of the Public Information Programs Division (PIPD), Information Review and Release Group (IRRG), Information Management Services (IMS), Office of the Chief Information Officer (CIO), Central Intelligence Agency (CIA). I hereby incorporate by reference my prior declaration in this case, dated 14 July 2008. I make this second declaration in support of the CIA's Reply to Plaintiff's Opposition to the CIA's Motion for Summary Judgment.

2. The purpose of this second declaration is to provide additional information about the CIA's search for records in response to Plaintiff's Freedom of Information Act (FOIA)

request. By letter dated 18 October 2007, Plaintiff submitted a FOIA request to the CIA for the following records:

> "copies of all internal Central Intelligence Agency ("CIA") documents pertaining to discussions *concerning the decision to initiate an internal review* of the operations of the CIA's Inspector General ("IG"), John Helgerson, and of the IG's Office as a whole." (Emphasis added).

A true and correct copy of Plaintiff's 18 October 2007 letter is attached as Exhibit A hereto. Based on the extremely narrow focus of this request--information "concerning the decision to *initiate* an internal review" of the IG and the IG's Office as a whole--the CIA searched for records that would have pre-dated the announcement of the review of the IG's office. Because Plaintiff's request was so narrow, the CIA did not search for records that would have been produced during the review of the IG, or the office as a whole.

    3. The CIA's search for records included all components where records concerning "the decision to initiate" a review of the IG and the IG's office as a whole might reasonably be located. CIA IMS professionals determined that the Director of Central Intelligence Agency (DCIA) area was the only part of the CIA reasonably likely to have records responsive to Plaintiff's request because the Director of the CIA decided to initiate the review and the Office of the DCIA carried out the review of the IG. Because the other directorates of the CIA--the National Clandestine Service (NCS), the Directorate of Support (DS), the

Directorate of Intelligence (DI), and the Directorate of Science and Technology (DS&T)--were not involved in the decision to initiate the internal review, CIA IMS professionals determined that these directorates would not be reasonably likely to have records responsive to Plaintiff's request. The DCIA Area, which includes the DCIA Action Center (DAC) and the independent offices of the Office of Inspector General (OIG), the Office of General Counsel (OGC), and the Office of Public Affairs (OPA), were all tasked to search for records in response to Plaintiff's request.

4. The CIA searched for records in existence as of the date of the acceptance letter sent to Plaintiff. A true and exact copy of the CIA's 5 November 2007 letter is attached as Exhibit B hereto. The DCIA area was tasked with searching for documents in response to Plaintiff's FOIA request on 9 November 2007. Thus, because searches were undertaken in response to Plaintiff's request so soon after the date of the acceptance letter, the CIA determined that this would be a reasonable cut-off date in terms of providing a temporal limit to the search for responsive records. Furthermore, because Plaintiff's request sought records that concerned the decision to initiate an internal review of the IG and the IG's office as a whole, this cut-off date was more than reasonable, because it post-dates the decision to conduct the internal review.

5. Finally, Plaintiff asserts that it can identify, based on the CIA Act of 1949, 50 U.S.C. § 403, records that the CIA was obligated to create that would be responsive to Plaintiff's request.[1] While the IG's Office is obligated to meet certain reporting requirements under the CIA Act, the CIA did not search for any IG reporting relating to the internal review of the IG's Office simply because these documents would not be responsive to Plaintiff's request. Any documentation relating to the IG Office's compliance with the internal review would not be responsive to a request for records relating to the *decision to initiate* the internal review of the IG and the IG's office as a whole.

* * * *

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed this 26th day of August, 2008.

_____<br>
Delores M. Nelson<br>
Information and Privacy Coordinator<br>
Central Intelligence Agency

---

[1] See Plaintiff's Opposition at pp. 12-15.

EXHIBIT A

Case 1:08-cv-00708-JR    Document 11-3    Filed 08/26/2008    Page 1 of 6

F-2008-00103

**The James Madison Project**
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036

(202) 498-0011                                             E-Mail: JaMadPro@aol.com
(202) 330-5610 fax                                         http://www.jamesmadisonproject.org

18 October 2007

Scott A. Koch
Central Intelligence Agency
Information and Privacy Coordinator
Washington, D.C. 20505

Re: <u>FOIA Request – Internal Investigation of IG's Office</u>

Dear Mr. Koch:

    This is a request on behalf of The James Madison Project under the Freedom of Information Act, 5 U.S.C. § 552, <u>et seq.</u>, for copies of all internal Central Intelligence Agency ("CIA") documents pertaining to discussions concerning the decision to initiate an internal review of the operations of the CIA's Inspector General ("IG"), John Helgerson, and of the IG's Office as a whole. Enclosed please find copies of news articles from *The New York Times*, *Los Angeles Times*, and *USA Today* referring to confirmation by the CIA that Director General Michael Hayden has ordered the internal review.

    We are hereby requesting a waiver of all fees. The James Madison Project is a non-profit organization under the laws of the District of Columbia and has the ability to disseminate information on a wide scale. Stories concerning our activities have received prominent mention in many publications including, but not limited to, *The Washington Post*, *The Washington Times*, *St. Petersburg Tribune*, *San Diego Union Tribune*, *European Stars & Stripes*, *Christian Science Monitor*, *U.S. News and World Report*, *Mother Jones* and *Salon Magazine*. Our website, where much of the information received through our FOIA requests is or will be posted for all to review, can be accessed at

---

"Knowledge will forever govern ignorance, and a people who mean to be their own Governors, must arm themselves with the power knowledge gives."
                                                                                James Madison, 1822

**The James Madison Project**

http://www.jamesmadisonproject.org. Prior requests submitted by our organization have all received fee waivers.

We are also asking for expedited processing. The 1996 amendments to the Freedom of Information Act permit expedited processing when a "compelling need" exists. See 5 U.S.C. § 552 (a)(6)(E)(v). Specifically, "compelling need" means "with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." Id. at § 552 (a)(6)(E)(v)(II). The CIA has adopted internal regulations governing expedited processing and has determined that a "compelling need" is deemed to exist where the "request is made by a person primarily engaged in disseminating information and the information is relevant to a subject of public urgency concerning an actual or alleged Federal government activity." See 32 C.F.R. § 1900.34(c)(2).

There can be no question that the information sought would contribute to the public's understanding of government operations or activities and is in the public interest. Over the course of the Global War on Terror ("GWOT"), numerous documents from a host of executive branch agencies have been released, detailing the legal and policy considerations that have formed the basis for discussions on a wide-range of national security policies. One example was the DOJ's disclosure of memoranda that originated in its Office of Legal Counsel and which formed a critical component of U.S. policies concerning detention of terrorist suspects. Given the highly-publicized nature of this particular controversy and its relation to the activities of the CIA's internal "watchdog," an office which has recently produced reports highlighting critical failures by the CIA in its prosecution of the GWOT, detailing the span of arguments considered prior to the authorization of this internal review will clearly contribute to the public's understanding of government operations or activities.

With respect to expedited processing, as explained above, JMP has been and continues to be primarily engaged in disseminating information on a wide scale and clearly falls within the scope of the statute. A "compelling need" exists due to the critically important political and legal questions that are clearly implicated by the decision to authorize the internal review of the IG's Office. Not only does the review have the potential to serve, either in mere appearance or in actual reality, as evidence of the politicization of a statutorily-designated non-political division within the CIA, but it also raises the possibility of constituting unlawful interference in the activities of the IG and obstruction of the IG's statutory obligations.

---

"Knowledge will forever govern ignorance, and a people who mean to be their own Governors, must arm themselves with the power knowledge gives."

James Madison, 1822

𝔗𝔥𝔢 𝔍𝔞𝔪𝔢𝔰 𝔐𝔞𝔡𝔦𝔰𝔬𝔫 𝔓𝔯𝔬𝔧𝔢𝔠𝔱

The CIA is required by law to respond to this request within 20 working days. However, the CIA is required to issue a determination on the request for expedited processing "within 10 days after the date of the request." 5 U.S.C. § 552 (a)(6)(E)(ii)(I). Therefore, the CIA's response is due on or before October 28, 2007. Failure to timely comply may result in the filing of a civil action against your agency in the United States District Court for the District of Columbia. Please note that the denial of expedited processing should not interfere with the normal processing of these requests.

If you deny all or part of this request, please cite the specific exemptions you believe justifies your refusal to release the information or permit the review and notify us of your appeal procedures available under the law. In excising material, please "black out" rather than "white out" or "cut out".

Your cooperation in this matter would be appreciated. If you wish to discuss this request, please do not hesitate to contact me at either (202) 498-0011 or my law office at (202) 454-2809.

Finally, please have all return correspondence addressed specifically to my attention to ensure proper delivery.

Sincerely,

Mark S. Zaid
Executive Director

/BM

"𝔎𝔫𝔬𝔴𝔩𝔢𝔡𝔤𝔢 will forever govern ignorance, and a people who meant to be their own Governors, must arm themselves with the power knowledge gives."

𝔍𝔞𝔪𝔢𝔰 𝔐𝔞𝔡𝔦𝔰𝔬𝔫, 1822

**The New York Times** 

October 11, 2007

# Watchdog of C.I.A. Is Subject of C.I.A. Inquiry

By MARK MAZZETTI and SCOTT SHANE

WASHINGTON, Oct. 11 — The director of the Central Intelligence Agency, Gen. Michael V. Hayden, has ordered an unusual internal inquiry into the work of the agency's inspector general, whose aggressive investigations of the C.I.A.'s detention and interrogation programs and other matters have created resentment among agency operatives.

A small team working for General Hayden is looking into the conduct of the agency's watchdog office, which is led by Inspector General John L. Helgerson. Current and former government officials said the review had caused anxiety and anger in Mr. Helgerson's office and aroused concern on Capitol Hill that it posed a conflict of interest.

The review is particularly focused on complaints that Mr. Helgerson's office has not acted as a fair and impartial judge of agency operations but instead has begun a crusade against those who have participated in controversial detention programs.

Any move by the agency's director to examine the work of the inspector general would be unusual, if not unprecedented, and would threaten to undermine the independence of the office, some current and former officials say.

Frederick P. Hitz, who served as C.I.A. inspector general from 1990 to 1998, said he had no first-hand information about current conflicts inside the agency. But Mr. Hitz said any move by the agency's director to examine the work of the inspector general would "not be proper."

"I think it's a terrible idea," said Mr. Hitz, who now teaches at the University of Virginia. "Under the statute, the inspector general has the right to investigate the director. How can you do that and have the director turn around and investigate the I.G.?"

A C.I.A. spokesman strongly defended the inquiry on Thursday, saying General Hayden supported the work of the inspector general's office and had "accepted the vast majority of its findings."

"His only goal is to help this office, like any office at the agency, do its vital work even better," said Paul Gimigliano, the spokesman.

Current and former intelligence officials said the inquiry had involved formal interviews with at least some of the inspector general's staff and was perceived by some agency employees as an "investigation," a label Mr. Gimigliano rejected.

Several current and former officials interviewed for this article spoke on condition of anonymity because of the sensitivity of the inquiry.

The officials said the inquiry was being overseen by Robert L. Deitz, a trusted aide to the C.I.A. director and a lawyer who served as general counsel at the National Security Agency when General Hayden ran it. Michael Morrell, the agency's associate deputy director, is another member of the group, officials said.

Reached by phone Thursday, both Mr. Helgerson and Mr. Dietz declined to comment.

In his role as the agency's inspector general since 2002, Mr. Helgerson has investigated some of the most controversial programs the C.I.A. has begun since the Sept. 11 attacks, including its secret program to detain and interrogate high value terrorist suspects.

Under federal procedures, agency heads who are unhappy with the conduct of their inspectors general have at least two places to file complaints. One is the Integrity Committee of the President's Council on Integrity and Efficiency, which oversees all the inspectors general. The aggrieved agency head can also go directly to the White House.

If serious accusations against an inspector general are sustained by evidence, the president can dismiss him.

Both those routes avoid the awkward situation officials describe at the C.I.A. and preserve the independence of the inspector general.

But one intelligence official who supports General Hayden's decision to begin an internal inquiry said that going outside the agency would "blow things way out of proportion."

A report by Mr. Helgerson's office completed in the spring of 2004 warned that some C.I.A.-approved interrogation procedures appeared to constitute cruel, inhuman and degrading treatment, as defined by the international Convention Against Torture.

Some of the inspector general's work on detention issues was conducted by Mary O. McCarthy, who was fired from the agency last year after being accused of leaking classified information. Officials said Mr. Helgerson's office was nearing completion on a number of inquiries into C.I.A. detention, interrogation, and "renditions" — the practice of seizing suspects and delivering them to the authorities in other nations.

The inspector general's office also rankled agency officials when it completed a withering report about the C.I.A's missteps before the Sept. 11 attack — a report that recommended "accountability boards" to consider disciplinary action against a handful of senior officials.

When the report was made public in August, General Hayden took the rare step of pointing up criticisms of the report by the former intelligence director, George J. Tenet and his senior aides, saying many officials "took strong exception to its focus, methodology and conclusions."

Some agency officers believe the aggressive investigations by Mr. Helgerson amount to unfair second guessing of intelligence officers who are often risking their lives in the field.

"These are good people who thought they were doing the right thing," said one former agency official. "And now they are getting beat up pretty bad and they have to go out an hire a lawyer."

Agency officials have also criticized the length of the inspector general's investigations, some lasting more

EXHIBIT B



Central Intelligence Agency

Washington, D.C. 20505

Mr. Mark S. Zaid
Executive Director
The James Madison Project
1250 Connecticut Avenue, NW
Suite 200
Washington, DC 20036

Reference: F-2008-00103

Dear Mr. Zaid:

On 19 October 2007 the Office of the Information and Privacy Coordinator received your 18 October 2007 Freedom of Information Act (FOIA) request for "copies of all internal Central Intelligence Agency ('CIA') documents pertaining to discussions concerning the decision to initiate an internal review of the operations of the CIA's Inspector General ('IG'), John Helgerson, and of the IG's Office as a whole." We have assigned your request the reference number above. Please use this number when corresponding with us so that we can identify it easily.

We accept your request and will process it according to the FOIA, 5 U.S.C. § 552, as amended, and the CIA Information Act, 50 U.S.C. § 431, as amended. Unless you object, we will limit our search to CIA-originated records existing through the date of this acceptance letter.

As a matter of administrative discretion, we will waive the fees associated with processing your FOIA request in this instance. Therefore, your request for a fee waiver is granted.

You have requested expedited processing. We handle all requests in the order we receive them: that is, "first-in, first-out." We make exceptions to this rule only when a requester establishes a compelling need under the standards in our regulations. A "compelling need" exists: 1) when the matter involves an imminent threat to the life or physical safety of an individual, or 2) when a person primarily engaged in disseminating information makes the request and the information is relevant to a subject of public urgency concerning an actual or alleged Federal government activity. Your request does not demonstrate a "compelling need" under these criteria and, therefore, we deny your request for expedited processing.

The large number of FOIA requests CIA receives has created unavoidable delays making it unlikely that we can respond within the 20 working days the FOIA requires. You have the right to consider our honest appraisal as a denial of your request and you may appeal to the Agency Release Panel. A more practical approach would permit us to continue processing your request and respond to you as soon as we can. You will retain your appeal rights and, once you receive the results of our search, can appeal at that time if you wish. We will proceed on that basis unless you object.

Sincerely,

Scott Koch
Information and Privacy Coordinator